**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE:** Stivax Sales and Marketing Litigation

**MDL No. 22-107**

**BRIEF IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION OR
CONSOLIDATION UNDER 28 U.S.C. §1407**

## I.      INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Movant-Plaintiff Neurosurgical Care, LLC respectfully moves the Judicial Panel on Multidistrict Litigation ("Panel") to transfer and centralize the actions listed in the Schedule of Actions, and subsequent tagalong actions, to the to the Honorable G. Murray Snow, Chief United States District Judge for the District of Arizona, who currently presides over the most advanced action, the *Munderloh, et al. v. Biegler GmbH, et al.,* for coordinated or consolidated pretrial proceedings.

All actions are based on the same common course of conduct by the same Defendants concerning their fraudulent marketing and sale of The Stivax System ("Stivax") as eligible for reimbursement by The Medicare Program ("Medicare").  Although Movant's case was the first filed action by more than a year, it is now the least advanced.  The Movant's court presided over Defendants' pleading and jurisdictional challenges for over two years only to issue opinions directing the parties to start over, and only *after* Movant serves Defendant Biegler GmbH in Austria pursuant to The Hague Service Convention.  While the Movant's Court did not act, the proposed transferee court, the *Munderloh* Court in the District of Arizona, resolved all pleading and jurisdictional challenges and is now in full discovery.

Therefore, Movants seek the transfer and assignment of the Actions, which all seek a finding that purchasers of Stivax were the victims of a fraudulent scheme orchestrated by

Defendants to the District of Arizona, as well as any Actions subsequently filed involving similar facts or claims.  Movants also seek that the Actions, along with any future tag-along Actions, be assigned to the Honorable G. Murray Snow, United States District Court Judge for the District of Arizona, who is currently presiding over the most advanced Stivax case.

## II.    <u>BACKGROUND</u>

Stivax is a single use, battery-powered, electrical nerve stimulator which is used for the stimulation of the cranial nerves innervating the ear to treat back, joint and arthritic pain.  After Defendant Biegler GmbH's ("Biegler") predecessor product, the P-STIM System ("P-STIM"), was declared unreimbursable by Medicare around the end of 2015, Biegler and James Carpenter ("Carpenter") quickly pivoted to gain FDA approval to promote Stivax, the substantial equivalent of P-STIM, as Medicare reimbursable despite the conclusion the known conclusion that P-STIM was not Medicare eligible.

Stivax is manufactured by Biegler, who also manufactured the P-STIM.  Although Biegler internally knew as early as November 2014 that P-STIM was not eligible for Medicare reimbursement, CMS officially declared P-STIM ineligible on October 22, 2015.  This fact was known to Defendants, Biegler, Carpenter, Solace Advancement, Doc Solutions and Dr. Timothy Warren before the sale of Stivax occurred in the United States.  By April 24, 2016, Biegler sought approval from the FDA to market Stivax (a repackaged P-STIM), and did so based on the representation that Stivax was the substantial equivalent of P-STIM.  The FDA approved this request on May 26, 2016, and concluded Stivax was substantially equivalent to its predicate device, P-STIM, that was already deemed not to be Medicare reimbursable.

Once approved in May 2016, and only a few months after P-STIM was announced as ineligible, Stivax was shipped to the United States pursuant to Biegler's agreement with Solace

Advancement, which was founded by Defendant Carpenter.  Stivax was then distributed and sold across the United States pursuant to distribution agreements between Solace Advancement and distributors like Doc Solutions.  Stivax claims were almost immediately submitted to Medicare for reimbursement.  The Defendants' scheme was to advise clinicians that Stivax was Medicare eligible pursuant to a different, yet equally inapplicable, Medicare code.  The plan was laid bare in text messages stating: "Agreed, I'm going to go full bore with Stivax as that's where the $ is now, when that dies out is when I will look at getting something else going.  I think we have 2-3 years left on the [inapplicable Medicare] code and there is plenty of money to make now before the cuts come."

This is the Stivax Enterprise, and its purpose was to sell Stivax throughout the United States, and it did so pursuant to the common scheme or plan which included knowingly misrepresenting Stivax as Medicare reimbursable pursuant to inapplicable billing codes.  Based on the misrepresentation by the Stivax Enterprise that Stivax was Medicare reimbursable, Plaintiff and the Class purchased Stivax and submitted claims to Medicare for reimbursement, that Medicare paid, and which ultimately triggered governmental investigations and resulting damages.

Plaintiff Neurosurgical Care LLC was the victim of Defendants fraud, and later the subject of a Civil Investigative Demand by the government for submitting Stivax claims to Medicare for reimbursement, and is now an identified victim by the United States to support a False Claims Act case against Dr. Timothy Warren.  All three Actions seek similar relief based on the same factual claims, filed in federal court:

1.  *Neurosurgical Care, LLC v. Doc Solutions LLC et al.,* No. 2:19-cv-5751-JMY (E.D. Pa.) filed December 6, 2019.

2.     *Munderloh, et al. v. Biegler GmbH, et al.,* Case No. 3:21-cv-8004-GMS (D. Ariz.) filed January 6, 2021.

3.     *United States of America v. Timothy D. Warren, et al*., Case No. 2:21-cv-4511-MSG (E.D. Pa) filed October 14, 2021.

Legally, the purpose of centralizing these claims is to promote the just and efficient litigation of these actions, to avoid inconsistent rulings on key and fundamental issues, and to prevent duplicative discovery and other inefficiencies that would threaten to drain judicial resources.  It is not necessary that the cases are identical or that common issues predominate; all that is required are enough common questions to warrant coordination or consolidation.  Federal judges are well equipped to manage centralization in cases where there are substantial differences and complexities. Often, the more complicated and voluminous situation confirm the strength of centralization, where skilled judges can work with experienced counsel to create plans for moving otherwise seemingly complex and overwhelming cases to an efficient and successful resolution.

While the sales of Stivax unquestionably impacted users in many states, the District of Arizona presents the most efficient and appropriate forum for this litigation.  The District of Arizona has vast experience successfully managing multidistrict litigation.

**III.     ARGUMENT**

    **A.     TRANSFER OF THE ACTIONS TO ONE COURT FOR COORDINATION OR CONSOLIDATION IS APPROPRIATE UNDER 28 U.S.C. § 1407.**

Transfer is appropriate when motions pending in different judicial district involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407.  In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact
> are pending in different districts, such actions may be transferred to
> any district for coordinated or consolidated pretrial proceedings.
> Such transfers shall be made by the judicial panel on multidistrict
> litigation authorized by this section upon its determination that
> transfers for such proceedings will be for the convenience of parties
> and witnesses and will promote the just and efficient conduct of such
> actions.

*Id.; see also In re Nifedipine,* 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).  The purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions."  *In re Plumbing Fixture Cases,* 298 F. Supp. 484, 491-92 (J.P.M.L. 2017) (same); *In re Capital One Customer Data Sec Breach Litig*., 396 F. Supp. 3d 1364, 1365 (J.P.M.L. 2019) (same).

Pursuant to 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where: (1) actions pending in different districts involve one or more common question of fact, and (2) the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions.  28 U.S.C. §1407(a); *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017) (transfer of related actions to a single district for pretrial proceedings "conserve[s] the resources of the parties, their counsel, and the judiciary"); *Capital One Customer Data Sec. Breach,* 396 F. Supp. 3d at 1365 (same).  Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *Plumbing Fixture Cases,* 298 F. Supp. at 493.

Consolidation of actions involving common factual questions makes sense when numerous judges will be asked to address similar pretrial matters and resolve similar pretrial motions involving similar fact patterns.  *See In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006).  Notably, "[t]ransfer under Section 1407 does not require a complete identity or

even a majority of common factual or legal issues as a prerequisite to transfer.  Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands."  *In re Katz Interactive Call Processing Patent Litig.,* 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007).

The claims asserted in every Action arise from the same common course of conduct relating to the marketing, sale, and submission of Stivax claims for Medicare reimbursement.  Each Action is at a different procedural posture making informal coordination impossible.  The transfer of the Actions to the same court for consolidated or coordinated proceedings is appropriate because common questions of fact exist, and consolidation or coordination before one court will ensure efficient management of the litigation and avoid inconsistent ruling on these issues impacting so many Plaintiffs across the United States.

## 1.      The Actions Involve Common Factual Questions.

Here, all the Actions, and any tag-along actions, will require a determination of whether Defendants knowingly and falsely represented Stivax as Medicare reimbursable, and each Defendant's role in carrying out that fraud.  Section 1407 does not require majority of common factual issues as a condition for transfer, only that there are common questions presented which justify consolidation and coordination.  *See e.g., In re Ins. Brokerage Antitrust Litig.,* 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005).  In this case, the facts surrounding Defendants' conduct in the marketing and sale of Stivax as Medicare reimbursable establish the basis for every claim asserted in the three Actions.

What is important and relevant to the Panel's decision is that transfer and consolidation or coordination will provide a consistent and uniform resolution to the common factual issues, which will facilitate the efficient administration of all the Action even considering any differences that

may exist.  "[T]ransfer under Section 1407 has the salutary effect of placing all actions in th[e] docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation,* 407 F. Supp. 1403, 1404 (J.P.M.L. 1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to a just and expeditious resolution of the actions to the benefit of not just some but all of the litigation's parties." *Ins. Brokerage Antitrust,* 360 F. Supp. 2d at 1372; *see also Checking Account Overdraft,* 626 F. Supp. 2d at 1335. The common questions of fact that are implicated here weigh heavily in favor of consolidation and coordination.

>        **2.      Transfer Will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of Actions.**

According to the Manual for Complex Litigation, the following four factors govern whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases:

>       1.      The elimination of duplicative discovery;
>
>       2.      The avoidance of conflicting rules and schedules;
>
>       3.      The reduction of litigation cost; and
>
>       4.      The conservation of the time and effort of the parties, attorneys, witnesses, and courts.

Manual for Complex Litigation (Fourth), § 20.131, at 219.

In this litigation, there are currently three pending Actions, in front of three separate judges, in two different districts.[1]  Each Action involves virtually identical factual questions regarding

---

[1] Three actions are sufficient to warrant transfer and coordination or consolidation in light of the questions at issue here. *See, e.g.* Manual for Complex Litigation Fourth § 20.131, at * 1 ("As few as two cases may warrant multidistrict treatment...."); *In re Dynamic Random Access Memory*

Defendants' conduct, and overlapping issues exist concerning Plaintiffs' legal claims and damages. Consolidation or coordination will eliminate the likelihood of duplicative discovery and proceedings that might result in inconsistent rulings and will prevent judicial resources from being needlessly wasted. *See In re Vioxx Prod. Liab. Litig.,* 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005); *see also In re Amino Acid Lysine Antitrust Litig.,* 910 F. Supp. 696, 698 (J.P.M.L. 1995) (concluding that consolidation was necessary to eliminate inconsistent pretrial rulings); *In re A.H. Robins Co. "Dalkon Shield" IUD Prod. Liab. Litig.,* 406 F. Supp. 540, 542 (J.P.M.L. 1975) (concluding that transfer was necessary to prevent duplication of discovery and to eliminate the possibility of conflicting pretrial rulings). Without transfer, coordination, and/or consolidation of the Actions and any future tag-along cases, litigation will needlessly entail judicial inefficiency and unnecessary expense. Further, different federal courts, in duplicating ruling on the same issues, could make contradictory findings. Additionally, for the defendants, having to defend multiple Actions in multiple districts will result in expenditures of money and resources that may be obviated by consolidation and coordination.

The concerns consolidation and transfer under Section 1407 are meant to prevent are a reality here. Movant's case was filed in December 2019, and that Court has not yet resolved Defendants' Rule 12 pleading challenges, including service-of-process issues and personal jurisdiction arguments. Instead, after more than two years without action and without resolving the questions surrounding service-of-process, the Movant's Court simply ordered that Movant

---

*(DRAM) Antitrust Litig.,* 228 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (transferring and consolidating two cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.,* 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer and consolidation of two cases); *In re Amoxicillin Patent & Antitrust Litig.,* 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer and consolidation of three cases involving complex patent and antitrust issues); *In re: Park West Galleries, Inc., Mktg. & Sales Practices Litig.,* 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) (transfer ordered where three actions were pending in three districts).

serve Biegler in Austria pursuant to The Hague Service Convention.  This ruling overlooked the arguments surrounding service of Biegler's United States agent and otherwise imposes great, unnecessary expense and additional unwarranted delay.  What is more, Biegler waived that same service in the *Munderloh* Action, but refuses to do the same in the Movant's action.  The *Munderloh* Action has also resolved all pleading and jurisdictional arguments, and is now in discovery.  That same discovery will be duplicated at a later date by the other Actions if consolidation is not granted.  Similarly, the now strikingly different procedural posture of the Actions prevents any informal coordination amongst the parties and counsel.  Thus, Section 1407 strongly favors consolidation of the Actions.

### B.   THE DISTRICT OF ARIZONA IS THE APPROPRIATE FORUM FOR TRANSFER AND COORDINATION OR CONSOLIDATION

The *Munderloh* Action pending in the District of Arizona presents the most appropriate forum for transfer.  The alleged fraud concerning Defendants' marketing and sale of Stivax spanned the nation, but with primary witnesses located in Florida, Michigan, Kansas and Austria.  The District of Arizona is geographically suited for accessibility for all parties.  The District of Arizona is also currently not burdened by other MDL proceedings. [2]

In the District of Arizona, United States District Judge G. Murray Snow is an excellent jurist who can shepherd this litigation.  Judge Snow has efficiently managed the *Munderloh* Action, which was filed a year *after* Movant's Action and is now years ahead of it.  Judge Snow is not currently managing any MDLs on her docket and has the experience and demeanor necessary to guide this litigation.

---

[2] There is currently only one MDL pending in the District of Arizona, which is in its final stage with only two of over 8,600 original cases remaining. *See In Re Bard IV Filters Product Liability Litig.*, MDL No. 2641.

## IV.      CONCLUSION

For these reasons, Movants respectfully request that the Panel grant their motion for transfer and coordination or consolidation under 28 U.S.C. § 1407 and transfer the Actions to the District of Arizona before the Honorable G. Murray Snow, District Judge.

Dated: September 30, 2022                    Respectfully submitted,

*/s/ Simon Bahne Paris*
Simon Bahne Paris
Patrick Howard
SALTZ MONGELUZZI & BENDESKY, P.C.
1650 Market Street, 52nd Floor
One Liberty Place
Philadelphia, PA  19103
Tel:  (215) 496-8282
Fax:  (215) 754-4443
Email:  sparis@smbb.com
Email:  phoward@smbb.com

*Attorneys for Plaintiff, Neurosurgical Care, LLC*